611 S.E.2d 914

**In the Matter of Herbert Altonia ADDISON, Respondent.**

**No. 25967.**

Supreme Court of South Carolina.

Submitted Feb. 22, 2005.

Decided April 11, 2005.

Henry B. Richardson, Jr., Disciplinary Counsel, and Assistant Deputy Attorney General Robert E. Bogan, both of Columbia, for the Office of Disciplinary Counsel.

Herbert Altonia Addison, of Hopkins, pro se.

PER CURIAM.

In this attorney disciplinary matter, respondent and the Office of Disciplinary Counsel (ODC) have entered into an Agreement for Discipline by Consent pursuant to Rule 21, RLDE, Rule 413, SCACR. In the agreement, respondent admits misconduct and consents to any sanction in Rule 7(b), RLDE, Rule 413, SCACR, including disbarment. In addition, respondent agrees to pay restitution to clients, banks, and other persons and entities who have incurred losses as a result of his misconduct. We accept the agreement and disbar respondent from the practice of law in this state. The facts, as set forth in the agreement, are as follows.

## FACTS

### Matter I

Complainant A owned a mobile home located on a portion of her mother's property. In 1999, Complainant A obtained a refinancing loan. Respondent conducted the loan closing which was to include conveyance of 3/10 of an acre from Complainant A's mother to Complainant A. Respondent incorrectly described the land and conveyed all of Complainant A's mother's land to Complainant A. The error was discovered in November 2000 when Complainant A's mother tried to obtain a home improvement loan.

Respondent acknowledges he failed to take adequate and timely steps to correct the error, including failing to cooperate with Complainant A, her attorney, and the mortgage company. Before the error could be corrected, Complainant A filed for bankruptcy.

## Matter II

Respondent was the closing attorney for the sale of Complainant B's property to a buyer on April 6, 2001. Before the closing, Complainant B or her representative received a HUD–1 statement which showed no excess deposit and that Complainant B would received $2,153.62 as net proceeds from the sale.

At closing, however, respondent presented a different HUD–1 statement which showed an excess deposit of $5,000.00 and that Complainant B was to pay $2,846.38. Complainant B expressed objection to the HUD–1 statement. Respondent left Complainant B and the mortgage broker alone. Complainant B alleges the mortgage broker represented that the changes were simply to allow the closing to proceed and that Complainant B would still receive the sum stated on the original HUD–1. Complainant B proceeded with the closing based on the mortgage broker's representations but has not received $2,153.62.

Respondent acknowledges executing a revised HUD–1 statement that contained false and/or misleading information, failing to adequately communicate with Complainant B, failing to record the deed after closing, failing to record the original mortgage, failing to secure a title policy, and failing to provide closing documents to the purchaser. Respondent further acknowledges using the name, address, and trust account of another attorney to conduct the closing although respondent was not an associate, employee, or partner of the other attorney and the other attorney was not involved in the closing.

## Matter III

In August 1999, respondent represented Complainant C in the purchase of a home. Complainant C was told the only encumbrance on the home was a $32,830.97 Internal Revenue Service (IRS) lien against one of the sellers and that the IRS would settle the lien for $2,600.00. Respondent was to pay $2,600.00 to the IRS from the proceeds of the loan closing. At some point, respondent forwarded a money order for $2,600.00 to the IRS, but did not request a release. The IRS did not process the money order or issue a release, apparently be-

cause it was unclear to which matter the money order pertained and the IRS did not know who to contact regarding the matter.

In January 2001, Complainant C refinanced her home with another attorney. The title search performed by Complainant C's refinancing attorney reported four encumbrances of record. One was the IRS lien respondent was to have paid from the proceeds of the August 1999 closing. The other three encumbrances were tax liens of the prior owner which had not been discovered by respondent in 1999 or by another law firm during an April 2000 refinancing. After much inquiry by Complainant C's refinancing attorney, the money order was identified and the lien matter was resolved.

## Matter IV

Respondent was a title insurance agent for Atlantic Title Insurance Company (Atlantic) from May 27, 1998 until December 24, 1999 when respondent's agency was terminated due to an unsatisfactory audit. The audit, which involved a review of approximately 350 files, revealed that respondent had collected premiums and issued commitments on a number of files, but failed to issue policies or remit premiums to Atlantic in the amount of $8,653.13.

Respondent delivered a check dated February 28, 2002, to Atlantic in the amount of $8,000.00. The check could not be negotiated due to insufficient funds in the account. Atlantic is still owed $8,653.13.

During investigation of this and other matters, Disciplinary Counsel issued subpoenas for respondent's financial records. Respondent did not fully respond to the subpoenas. Based on Disciplinary Counsel's review of the limited financial records respondent did supply, it was determined that from 1999 to 2000, one of respondent's trust accounts had twenty-seven insufficient and/or NSF checks and another trust account had twenty-two insufficient and/or NSF checks and negative balances on three occasions.

## Matter V

On May 2, 2002, a non-lawyer assistant in respondent's office sent a letter bearing her signature to Complainant D, a

contractor. The letter demanded that certain repairs be made on respondent's client's home before the warranty expired and threatened legal action if the repairs were not made. On May 3, 2002, Complainant D faxed a response to respondent's office stating that a detailed inspection of the home would be conducted by the vice-president of the company before the end of the week.

On May 9, the non-lawyer assistant sent a second letter to Complainant D. In this letter, the assistant thanked Complainant D for the inspection, but again demanded repairs. On May 14, Complainant D responded with a letter to respondent's office indicating all repairs were completed on May 13, 2002.

By separate letter, Complainant D raised the appearance of the unauthorized practice of law by non-lawyer employees to the Commission on Lawyer Conduct. Respondent did not respond to Disciplinary Counsel's request for information.

## Matter VI

In June 2001, respondent conducted a real estate closing for a client. The client was buying a house for herself and her daughter. At closing, respondent listed his former law partner as the settlement agent on closing documents. Respondent's former partner was not the settlement agent and respondent did not have permission to use his name.

Respondent's client passed away in January 2002. In the process of probating her estate, the personal representative, Complainant E, discovered that respondent failed to record the deed or provide his client with the original deed, causing the sellers to remain owners of record. Respondent also retained $389.04 at closing to pay county taxes but did not remit those funds to the county. Complainant E made several attempts to contact respondent, but he did not respond. The deed was recorded on April 9, 2002, but Complainant E has not received the deed and the taxes remain unpaid.

## Matter VII

On or about October 13, 1999, respondent conducted a real estate loan closing for Complainant F and withheld $18,791.00 to pay the IRS on behalf of the client. Between October 18,

1999 and June 13, 2001, respondent failed to pay the IRS on behalf of Complainant F. On June 13, 2001, respondent's trust account had a negative balance. Complainant F is still owed $18,791.00.

## Matter VIII

Respondent was retained to represent Complainant G in connection with claims against law enforcement agencies who had arrested and detained Complainant G in 1994 on charges of rape and related charges on which Complainant G was ultimately exonerated. Respondent failed to diligently and competently represent Complainant G, failed to communicate with Complainant G, and failed to take steps to protect Complainant G's interests upon termination of representation.

## Matter IX

On or about April 7, 2000, respondent conducted a residential real estate closing for Clients H and I. The property included two lots of land, and any improvements thereon, known as Lots 11 and 12, Block B, on a subdivision of Tracts 1 and 2, Block B, in Haskell Heights, Richland County, South Carolina, more particularly shown on a plat recorded in Richland County Plat Book 362 at page 2427. At the time of the closing, a dwelling was situated on Lot 11 and Lot 12 was vacant. The loan closing instructions provided by the lender and the title commitment for the mortgage required the mortgage to be secured by both lots and any improvements thereon. The property description drafted by respondent for the mortgage and, subsequently, the mortgage respondent recorded, did not include Lot 11 and the dwelling situated on it. Respondent's failure to comply with the closing instructions to include Lot 11 and its improvements in the mortgage was inconsistent with the clients' and lender's instructions and left the lender undersecured.

## LAW

Respondent admits that by his misconduct he has violated the following provisions of the Rules of Professional Conduct, Rule 407, SCACR: Rule 1.1 (lawyer shall provide competent representation to a client); Rule 1.3 (lawyer shall act with reasonable diligence and promptness in representing a client);

Rule 1.4 (lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information); Rule 1.15(a) (lawyer shall hold property of clients in the lawyer's possession in connection with a representation separate from the lawyer's own property); Rule 4.1 (in the course of representing a client, a lawyer shall not knowingly make a false statement of material fact to a third person); Rule 5.3(a) (a partner in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that a non-lawyer employees conduct is compatible with the professional obligations of the lawyer); Rule 8.4(a) (it is professional misconduct for a lawyer to violate the Rules of Professional Conduct); and Rule 8.4(d) (it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit, or misrepresentation).

Respondent further admits his misconduct is grounds for discipline under Rule 7, RLDE, of Rule 413, SCACR, specifically Rule 7(a)(1) (it is a ground for discipline for lawyer to violate Rules of Professional Conduct). In addition, he admits his misconduct violated Rule 417, SCACR.

## CONCLUSION

We accept the Agreement for Discipline by Consent and disbar respondent. Respondent is required to pay restitution to presently known and/or subsequently identified clients, banks, and other persons and entities who have incurred losses as a result of respondent's misconduct in connection with this matter. Moreover, respondent is required to reimburse the Lawyers' Fund for Client Protection for any claims paid as a result of his misconduct in connection with this matter. Respondent shall not apply for readmission until all restitution has been paid. Within fifteen (15) days of the date of this opinion, respondent shall file an affidavit with the Clerk of Court showing that he has complied with Rule 30 of Rule 413, SCACR, and shall also surrender his Certificate of Admission to the Practice of Law to the Clerk of Court.

**DISBARRED.**

TOAL, C.J., MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.